UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>BUD THEUS III,<br><br>　　　　　　Defendant. | 4:16-CR-40065-KES<br><br><br>ORDER ADOPTING AND MODIFYING REPORT AND RECOMMENDATION |

**NATURE AND PROCEDURE OF CASE**

　　Defendant, Bud Theus III, is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Theus has moved to suppress all physical evidence seized during the search of his vehicle. Docket 27. Theus later supplemented his motion to suppress to include a request to suppress all statements that Theus made to law enforcement following the stop of his vehicle. Docket 30. The motion was referred to United States Magistrate Judge Veronica L. Duffy for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).

　　An evidentiary hearing was held on December 14, 2016. On December 21, 2016, Magistrate Judge Duffy issued a report and recommendation granting Theus's motion in part and denying it in part. Docket 34. Both Theus and the government filed objections to portions of Magistrate Judge Duffy's report and recommendation. Docket 44; Docket 45. For the following reasons, the report and recommendation is adopted as modified by this opinion.

**LEGAL STANDARD**

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

**FACTS**

According to the testimony given and the exhibits introduced at the evidentiary hearing, the pertinent facts are as follows:

On February 19, 2016, just before 11:30 p.m., Officer Chad Winkel of the Sioux Falls Police Department was on patrol, sitting east of the intersection of West 10th Street and South Western Avenue in Sioux Falls, South Dakota. Officer Winkel's car was parked parallel to the north side curb on 10th Street with his vehicle facing west, immediately adjacent to the west-bound lane of travel on 10th street. Officer Winkel was watching the intersection to see if anyone violated the flashing traffic signal there. Because the climate controls

for Officer Winkel's vehicle were located behind his dash-mounted computer, Officer Winkel testified that it is easier for him to roll the windows in his patrol vehicle up and down to control the temperature rather than reaching to operate the heat and air conditioning controls.

At 11:30:42 p.m., a dark Cadillac, heading west on West 10th Street, drove past Officer Winkel's patrol vehicle. Officer Winkel testified that as the Cadillac passed by him he immediately smelled the odor of burnt marijuana. Officer Winkle further testified that when the Cadillac drove past, he had both of his front windows cracked open.[1] The Cadillac was within a few feet of the patrol car as it drove past.

After the Cadillac drove past Officer Winkel's patrol car, he immediately took steps to follow the Cadillac, but a light-colored sport-utility vehicle (SUV) was following the Cadillac. Officer Winkel had to let the SUV pass before pulling into the westbound lane of travel on West 10th Street. Once Officer Winkel began to follow the two vehicles, he positioned his patrol vehicle so as to keep the Cadillac in his sight despite the intervening presence of the SUV. Officer Winkel followed the Cadillac from behind the SUV for about six blocks and could not smell marijuana while behind the SUV.

---

[1] During the suppression hearing, Officer Winkel was cross-examined at length on whether the windows on his patrol vehicle were open as the Cadillac passed by. See Docket 41 at 20-24, 38-40. In light of Officer Winkel's testimony, the court finds that the evidence in the record supports a finding that the windows were cracked open, despite the fact it was February in South Dakota. See Docket 34 at 2 n.1 (taking judicial notice of weather records for February 19, 2016, in Sioux Falls, South Dakota, and observing the dress of Theus and the officers involved with the stop of Theus's car).

At 11:31:53 p.m., the Cadillac turned left off of West 10th Street and onto South Garfield Avenue. The SUV continued on West 10th Street, and Officer Winkel turned south to follow the Cadillac down South Garfield Avenue. After Officer Winkel had turned to follow the Cadillac, he again smelled the odor of burnt marijuana. The Cadillac then pulled into the parking lot of a Chinese restaurant at the corner of West 12th Street and South Garfield Avenue.[2] Officer Winkel pulled into the parking lot behind the Cadillac and was still able to smell the odor of burnt marijuana. At this point, 11:32:27 p.m., Officer Winkel activated his lights and initiated a stop of the Cadillac based upon the smell of burnt marijuana. Approximately two minutes had elapsed between Officer Winkel's first sighting of the Cadillac and the time he effectuated the traffic stop of the Cadillac.

Upon seeing the patrol lights, the driver of the Cadillac, later identified as Theus, immediately exited the driver's side of the Cadillac. Officer Winkel testified that as Theus exited the Cadillac, he observed smoke rolling out of the Cadillac from the passenger side of the car.[3] Officer Winkel, who was still in the process of calling in the license plates of the Cadillac to dispatch, ordered Theus to retake his seat in the Cadillac. Theus complied with this order.[4]

---

[2] As shown in Exhibit 1, the parking lot was mostly empty, and the Cadillac pulled to the far south end of the parking lot.

[3] This smoke is not visible on Officer Winkel's patrol car video. Exhibit 1.

[4] Officer Winkel testified at the suppression hearing that the reason he ordered Theus to get back into the Cadillac was for Officer Winkel's own safety.

4

At 11:32:59 p.m., Officer Winkel exited his patrol car and approached Theus's Cadillac on the passenger side. Officer Winkel testified he still smelled the odor of burnt marijuana and told Theus that both he and his Cadillac reeked of "weed." At 11:34:05 p.m., Officer Winkel ordered Theus to exit the Cadillac and come to the rear of the Cadillac with him. Theus complied and was then directed by Officer Winkel to place his hands on the trunk of the Cadillac, which Theus did.

As Officer Winkel prepared to do a pat-down search of Theus, Theus asked Officer Winkel why he was pulled over. Officer Winkel informed Theus that he stopped him because as Theus drove past his patrol car, he smelled burnt marijuana. At 11:34:15 p.m., Lieutenant Jon Lohr of the Sioux Falls Police Department arrived on the scene and took a position near Theus and Officer Winkel. At 11:34:37 p.m., Officer Winkel began a pat-down search of Theus's body and clothing, which resulted in Officer Winkle finding a baggie in Theus's pocket that contained marijuana. Officer Winkel held the baggie up for Theus and Lt. Lohr to see and commented that the baggie contained marijuana. Both Officer Winkel and Lt. Lohr testified that while Theus was not yet under formal arrest after the baggie of marijuana was discovered in his pocket, Theus would not have been allowed to leave the scene.[5]

At 11:36:03 p.m., Officer Vandervelde of the Sioux Falls Police Department arrived on the scene. Following Officer Vandervelde's arrival, either

---

[5] Officer Winkel further testified that even though he waited until later to arrest Theus, he could think of no reason why Theus would not be arrested for possession of marijuana after finding the baggie containing marijuana in Theus's pocket. See Docket 41 at 35.

he, Lt. Lohr, or both stood watch over Theus and remained within an arm's length of Theus.[6] For a brief time, both Officer Vandervelde and Lt. Lohr stood watch over Theus, before Lt. Lohr went to assist Officer Winkel in searching Theus's Cadillac at 11:36:40 p.m. Theus stood in a stationary position with his hands on the trunk of the Cadillac while Officer Winkel and Lt. Lohr searched the Cadillac's interior.

During the search of the interior of the Cadillac, Lt. Lohr remarked to Officer Winkel that the odor of marijuana must have been coming through the air vents of his patrol car because he was able to smell the odor of marijuana before he got out of his patrol car. Officer Winkel then detailed to Lt. Lohr that he originally smelled marijuana as the Cadillac passed by him and smelled it again once he turned the corner to follow the Cadillac, which is why he knew the Cadillac was the correct vehicle to stop. The search of the Cadillac's interior resulted in the officers finding a burning marijuana cigarette in the center console in a cup ashtray, some rolling papers, and a grinder with fresh marijuana.

At 11:39:23 p.m., Lt. Lohr ordered Theus to move away from his trunk and stand in front of Officer Winkel's patrol car, and Theus complied. While Theus was not handcuffed at this point, Officer Vandervelde, who moved in tandem with Theus, remained no more than an arm's length away from Theus as he stood in front of Officer Winkel's patrol car. At 11:39:53 p.m., Lt. Lohr

---

[6] According to Officer Winkel and Lt. Lohr, the reason an officer continuously stood guard over Theus was to prevent Theus from fleeing and to make sure Theus did not attempt to attack one of the officers.

opened the Cadillac's trunk and began searching there. As Lt. Lohr searched the trunk of the Cadillac, Theus stood freely in front of Officer Winkel's patrol car, flanked by Officer Vandervelde.[7]

While searching the trunk of the Cadillac, Lt. Lohr discovered a handgun wrapped in a towel. After finding the gun, Lt. Lohr said something to Theus while still at the trunk of the Cadillac. Then, with the gun in his hand, Lt. Lohr walked to within a foot of Theus to show Theus the gun and either make a comment or ask Theus a question.[8] Officer Vandervelde also stepped closer to Theus as Lt. Lohr questioned Theus about the gun.

As Lt. Lohr testified, the reason for saying anything to Theus was to ascertain whether Theus legally possessed the gun. In response to Lt. Lohr's follow-up question, Theus stated he owned a business in a bad neighborhood. Because Lt. Lohr did not hear Theus's statement clearly, Lt. Lohr asked Theus to repeat his statement, which Theus did by again repeating that he owned a business in a bad neighborhood. Lt. Lohr then asked Theus if the gun was his. Theus responded that the Cadillac was his, but never commented on ownership of the gun.

At 11:42:50 p.m., shortly after Lt. Lohr questioned Theus about the gun, Officer Winkel handcuffed Theus. And at 11:43:27 p.m., Theus was told that he

---

[7] Exhibit 1 shows that Theus alternated putting his hands in his jacket pockets or gesturing and occasionally shifted position with his feet while Lt. Lohr searched the trunk of the Cadillac. *See* Docket 34 at 6.

[8] It is not clear from Exhibit 1 what Lt. Lohr said to Theus while still at the trunk of the Cadillac or what Lt. Lohr initially said after walking over to Theus to question him about the gun. Docket 34 at 6.

7

was under arrest for possession of marijuana. Then, while handcuffed and in the backseat of Office Winkel's patrol car, Officer Winkel asked Theus whether he had a criminal record, which Theus said he did.

## DISCUSSION

At the conclusion of the evidentiary hearing, Theus conceded that the search of his Cadillac was lawful and that the search of his person yielded no evidence that is relevant to the prosecution of this firearms offense. As such, Magistrate Judge Duffy narrowed the report and recommendation to address two issues: (1) whether the stop of Theus's vehicle was supported by reasonable suspicion and (2) whether his statements were taken in violation of the rule in *Miranda*.[9] Docket 34 at 7-8. Theus objects to Magistrate Judge Duffy's finding that Officer Winkel had reasonable suspicion to initiate a stop of Theus's Cadillac. Docket 44. The government objects to Magistrate Judge Duffy's finding that Theus's statements to law enforcement resulted from an unwarned custodial interrogation and should be suppressed. Docket 45.

**I.    Did Officer Winkel have reasonable suspicion to stop the Cadillac?**

The Fourth Amendment permits brief investigative stops, including traffic stops, "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police

---

[9] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

8

and its degree of reliability.' " *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). A finding of "[r]easonable suspicion depends on 'the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.* at 1690 (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)).

"When evaluating the validity of a traffic stop, [courts] consider 'the totality of the circumstances—the whole picture.' " *Duffie v. City of Lincoln*, 834 F.3d 877, 883 (8th Cir. 2016) (quoting *Cortez*, 449 U.S. at 417). In determining under the totality of the circumstances whether reasonable suspicion exists to initiate a traffic stop, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 417). But, "[o]fficers may not turn a blind eye to facts that undermine reasonable suspicion." *Duffie*, 834 F.3d at 884. Once a vehicle is stopped, the traffic stop "entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.' " *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).

Upon review of Officer Winkel's patrol car video and Officer Winkel's testimony at the suppression hearing, the court agrees with the report and recommendation that Officer Winkel had reasonable suspicion to stop the Cadillac. During the suppression hearing, Officer Winkel testified about his

9

background regarding his past drug interdiction trainings and how often he has encountered the odor of marijuana in the course of his fourteen years as an officer with the Sioux Falls Police Department.[10] *See* Docket 41 at 5-6, 10-11. Officer Winkel also described in detail exactly how and when he was able to smell the odor of marijuana. A careful examination of Officer Winkel's testimony supports the conclusion that the government has met its burden to show that Officer Winkel had reasonable suspicion to initiate a stop of the Cadillac. *See Navarette,* 134 S. Ct. at 1687 (requiring that law enforcement have a "particularized and objective basis for suspecting the particular person stopped of criminal activity").

Officer Winkel first smelled marijuana as the Cadillac drove within a few feet of where his patrol car, which had the windows cracked open, was parked on West 10th Street. While Officer Winkel took steps to immediately follow the Cadillac, he had to wait for an SUV to pass by before he could safely pull out into traffic. For the approximately six blocks that Officer Winkel followed the Cadillac from behind the SUV, he was not able to smell the odor of marijuana. But, after both the Cadillac and Officer Winkel's had turned onto South Garfield Avenue, placing Officer Winkel's patrol car directly behind the Cadillac, Officer Winkel again was able to smell the odor of burnt marijuana. Officer Winkel followed the Cadillac into a parking lot, while still being able to smell the odor of burnt marijuana. Only then did Officer Winkel initiate a stop

---

[10] During cross-examination at the suppression hearing, Officer Winkel testified that this was the second time in his career that he initiated a stop of a vehicle because he smelled the odor of marijuana emanating from the vehicle. Docket 41 at 52.

10

of the Cadillac, suspecting that the driver was using marijuana in violation of South Dakota law.

In *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015), the Eighth Circuit rejected the argument that an officer needed to smell a strong odor of marijuana to have reasonable suspicion to search a vehicle for drugs. Instead, the Eighth Circuit concluded that "the smell of marijuana, along with the credible testimony by the officer, is sufficient to establish probable cause to search an automobile and its contents." *Id.*; *see also United States v. Barry*, 394 F.3d 1070, 1078 (8th Cir. 2005) (concluding that an officer's observation of a mist in the vehicle, along with the smell of marijuana and an air freshener, gave the officer, "at a minimum, reasonable suspicion to detain [the defendant]"); *United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1998) (holding that the smell of "burnt marijuana emanating from appellant's clothes and the interior of appellant's car," gave the police officer reasonable suspicion to suspect that "appellant was or had recently engaged in criminal activity, that is, using marijuana"). Factors in *Smith* that supported the arresting officer's credibility were his past training "in the detection of controlled substances, including the odor of both raw and burned marijuana." *Smith*, 789 F.3d at 929.

Given the Eighth Circuit's decision in *Smith*, it follows that if the court finds Officer Winkel's testimony that he smelled marijuana emanating from the Cadillac to be credible, the court should find that he had reasonable suspicion to initiate the stop of a vehicle. After reviewing Officer Winkel's testimony at the suppression hearing, the court finds it was credible. This finding is supported

by the fact that, despite extensive cross-examination regarding when and where he smelled the odor of marijuana coming from Theus's Cadillac, Officer Winkel's testimony remained consistent. Thus, given Officer Winkel's past training and experience, the court finds that under the totality of the circumstances Officer Winkel had a "particularized and objective basis" for suspecting that Theus was in possession of marijuana when he initiated the stop of Theus's Cadillac. *See Navarette*, 134 S. Ct. at 1687.

**II.    Whether Theus's statements are admissible?**

Under the Fifth Amendment, no defendant "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The rule under *Miranda* prevents the government from using statements 'stemming from custodial interrogation of the defendant,' unless the government has used 'procedural safeguards effective to secure the privilege against self-incrimination.' " *United States v. Laurita*, 821 F.3d 1020, 1023 (8th Cir. 2016) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). At its core, *Miranda* requires that an individual be advised of the privilege against self-incrimination and the right to the assistance of counsel prior to questioning when the suspect is (1) subject to interrogation and (2) in custody. *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990).

The government objects to the report and recommendation's conclusion that *Miranda* warnings were required because Theus was in custody when he was questioned by Lt. Lohr. *See* Docket 45 at 2-4, 5-6. The government also objects to the report and recommendation's conclusion that the parties did not

dispute that Theus was interrogated. Docket 45 at 7 (citing Docket 34 at 12). Given the government's objections, the court must analyze both prongs of the *Miranda* analysis: (1) whether Theus was in custody and (2) whether Theus was interrogated.

### A. Whether Theus was in custody?

The report and recommendation concluded that Theus was "in custody" for *Miranda* purposes starting at 11:35:01 p.m., the moment that Officer Winkel discovered the baggie of marijuana in Theus's pocket. Docket 34 at 21. The government objects to this conclusion and argues that the officers' questioning of Theus was merely brief, preliminary on-the-scene questioning resulting from a lawful traffic stop. *See* Docket 45 at 2-4. Further, the government argues that the placing of a "time stamp" on when Theus was placed in custody is an error because placing a time stamp on the encounter "fails to consider all factors occurring during the traffic stop." *Id.* at 3. Thus, the government contends that Theus's statements to Lt. Lohr regarding the ownership of the Cadillac, i.e. where the gun was found, need not be suppressed. *See id.* at 4-6.

Normally, law enforcement officers need not provide *Miranda* warnings when conducting roadside questioning resulting from a routine traffic stop because such questioning does not constitute a "custodial interrogation." *United States v. Howard*, 532 F.3d 755, 761 (8th Cir. 2008). Generally, routine on-the-scene questioning "does not present 'the compelling atmosphere inherent in the process of in-custody interrogation.' " *Id.* (quoting *Miranda*, 384

13

U.S. at 477-78). Thus, *Miranda's* safeguards only become applicable following a lawful traffic stop when "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

"To determine whether a suspect was in custody, [courts] ask 'whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the [officers] to leave.' " *Laurita*, 821 F.3d at 1024 (quoting *United States v. Vinton*, 631 F.3d 476, 481 (8th Cir. 2011)). The Eighth Circuit has set forth six non-exclusive indicia of custody that courts apply to determine whether a reasonable person would believe they were in custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

*Id.* (quoting *Griffin*, 922 F.2d at 1349). The first three factors are "mitigating factors" that tend to mitigate the existence of custody at the time of the questioning. *Griffin*, 922 F.2d at 1349. The last three factors are "coercive factors" that tend to aggravate the existence of custody. *Id.*

While an examination of these factors may be helpful in a given case, these indicia are not exhaustive and should not be applied ritualistically.

*United States v. Brave Heart*, 397 F.3d 1035, 1039 (8th Cir. 2005). Thus, a determination of whether a defendant is "in custody" for *Miranda* purposes "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). This is because " '[t]he most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will.' " *Id.* at 826 (quoting *Griffin*, 922 F.2d at 1349) (alterations in original). Furthermore, when employing the *Miranda* custody analysis, "[t]he ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." *Id.* at 828.

In support of its argument that the report and recommendation erred in placing a "time stamp" on when Theus became "in custody," the government cites *United States v. Howard*, 532 F.3d at 761. Specifically, the government contends that the questioning of Theus about the gun was nothing more than " '[g]eneral on-the-scene questioning as to facts surrounding a crime,' which does not present 'the compelling atmosphere inherent in the process of in-custody interrogation.' " *Id.* (quoting *Miranda*, 348 U.S. at 477-78). The government's argument, however, fails for three key reasons.

First, this argument discounts the fact that the offense that Theus was stopped and eventually arrested for was the suspected possession of marijuana, and not the suspected illegal possession of a firearm. *See* Docket 41

15

at 10 (Officer Winkel testified that Theus was stopped because Officer Winkel smelled marijuana emanating from Theus's Cadillac); *id.* at 14 (Officer Winkel testified that Theus was arrested for possession of marijuana). Second, this argument ignores the testimony of Officer Winkel and Lt. Lohr who both admitted that Theus was no longer free to leave after the marijuana baggie was found in Theus's pocket. *See* Docket 41 at 35, 74-75. Finally, this argument fails to look at the situation from the perspective of a reasonable person in Theus's position.

    An examination of the indicia of custody here shows that under the totality of the circumstances a reasonable person in Theus's position would not have felt free to terminate the encounter with Officer Winkel and Lt. Lohr after the baggie of marijuana was found in his pocket. First, once the baggie of marijuana was found, Theus was told where to stand and was constantly within an arm's length of either one or more officers. Second, a reasonable person in Theus's position would not believe he was free to terminate a traffic stop after (1) being told he was stopped because an officer smelled the odor of marijuana coming from the car as it drove by the officer and (2) actually having a bag of marijuana found in his pocket during a pat down search. And third, Theus was never told that he was not under arrest after the marijuana baggie was found in his pocket. *See Czichray*, 378 F.3d at 826 (quoting *Griffin*, 922 F.2d at 1349) (" 'The most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the

16

suspect that an arrest is not being made and that the suspect may terminate the interview at will.' ").

Despite the fact that Theus was not handcuffed until ten to twenty minutes after the bag of marijuana was found in his pocket, his movements were restrained as though he was under a formal arrest. *See id.* at 828. Thus, the court adopts Magistrate Judge Duffy's conclusion that Theus was "in custody" beginning at the time the baggie of marijuana was found in his pocket (11:35:01 p.m. on Exhibit 1).

### B. Whether Theus was interrogated?

The report and recommendation concluded that neither party contested whether Theus was interrogated when asked about the gun by Lt. Lohr or asked whether he was a felon by Officer Winkel. Docket 34 at 12. In its objections to the report and recommendation, the government specifically objected to the conclusion that Theus was interrogated. Docket 45 at 7. Thus, the court must determine whether Theus was interrogated by law enforcement.

Under *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980), an interrogation is subject to *Miranda's* protections when a suspect is in custody and when law enforcement should know its words or actions are "reasonably likely to elicit an incriminating response from the suspect." Included in this definition is explicit questioning initiated by law enforcement. *Id.* at 300–01 (finding that an interrogation occurs when a law enforcement officer engages in "either express questioning or its functional equivalent"). An "incriminating response" is any inculpatory or exculpatory response that the government may

17

seek to introduce at trial. *Id.* at 301 n.5. Whether the words or actions are "reasonably likely to elicit an incriminating response" hinges on the perceptions of the suspect and not the intent of law enforcement. *Id.*

Theus made three statements that the court must analyze in determining whether he was "interrogated" by Lt. Lohr and Officer Winkel. The first is Theus's statement that "he owned a business in a bad neighborhood." *See* Exhibit 1 at 11:41:47 p.m. – 11:41:53 p.m.[11] The second statement is Theus's admission that he owned the car where the gun was found. *See id.* at 11:41:55 p.m. – 11:42:00 p.m. The last statement is Theus's admission that he was previously convicted of a felony. *See id.* at 11:46:40 p.m. – 11:46:47p.m.

After examining each of these statements, the court concludes that Theus was "interrogated" and that the statements must be suppressed. Although Lt. Lohr's questioning of Theus regarding the gun lasted for only about 30 seconds, all of Lt. Lohr's questions were explicit and were designed to get a response from Theus. This is especially true when considering that Lt. Lohr's questions specifically asked Theus whether he owned the gun.[12] *See* Exhibit 1 at 11:41:54 p.m. (asking Theus "well is it your gun?"). Further, as Lt. Lohr admitted during the suppression hearing, the reason he asked Theus

---

[11] It is not clear on Exhibit 1 exactly what Lt. Lohr first said to Theus. *See* note 8, *supra*. What is clear, however, is that Lt. Lohr repeated what he thought Theus said, and Theus responded by saying, "I own a business in a bad neighborhood." Exhibit 1 at 11:41:51 p.m.

[12] Theus did not object to Magistrate Judge Duffy's conclusion that "[t]he only violation of constitutional dimension," was Theus's Fifth Amendment *Miranda* rights. Docket 34 at 24. Thus, Section D of the report and recommendation, *see* Docket 34 at 21-24, is adopted in full, and the physical fruits of the search of Theus's Cadillac will not be suppressed.

about the gun was because drugs had been found in the Cadillac. Docket 41 at 60. Given this admission, it is clear that Lt. Lohr knew, or at a minimum should have known, that his questions were "reasonably likely to elicit an incriminating response from [Theus]." *Innis*, 446 U.S. at 301.

The same logic applies to Officer Winkel's question regarding whether Theus had ever been convicted of a felony.[13] *See* Exhibit 1 at 11:46:40 p.m. This question was asked to Theus after he had been handcuffed and seat belted into the back seat of Officer Winkel's patrol car. Therefore, like the statements asked by Lt. Lohr, Officer Winkel's question to Theus was explicit and was designed to get an incriminating response. *See Innis*, 446 U.S. at 301.

Further, although Theus did not testify at the suppression hearing, it is clear that Theus likely would have understood that his statements would elicit an incriminating response. *See id.* (explaining that whether the words or actions of law enforcement are "reasonably likely to elicit an incriminating response" hinges on the perceptions of the suspect). Thus, after examining Theus's statements and the circumstances under which the statements were made, the court finds that Theus's statements to Lt. Lohr regarding the gun and Theus's statement to Officer Winkel about Theus's prior felony conviction must be suppressed under *Miranda*.

---

[13] Suppression of Theus's statements regarding his criminal history does not mean that the government cannot introduce evidence regarding his criminal history at trial. As Magistrate Judge Duffy correctly concluded, proof of Theus's prior conviction can be adduced by the government at Theus's trial "in the form of properly authenticated documents or whatever other avenue the government wishes to prove the fact." Docket 34 at 21-22.

## CONCLUSION

The court finds that Officer Winkel had reasonable suspicion to stop Theus's Cadillac on the suspicion that Theus possessed marijuana, and that the stop of the Cadillac was justified under the Fourth Amendment. But, the court also finds that Theus's statements to Lt. Lohr and Officer Winkel regarding owning a business in a bad neighborhood, owning the Cadillac where the gun was found, and his prior felony conviction must be suppressed because they are the result of an unwarned custodial interrogation in violation of Theus's Fifth Amendment *Miranda* rights. Because the parties did not object to Magistrate Judge Duffy's findings regarding inevitable discovery and the physical evidence found as a result of the stop of Theus's Cadillac, those portions of the report and recommendation are adopted. Thus, it is

ORDERED that the report and recommendation (Docket 34) granting Theus's motion to suppress in part and denying in part is adopted as modified by this opinion.

DATED February 27, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE